IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANTONIO JONES, #266322, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) CASE NO. 2:16-CV-784-ALB |
| OFFICER KNIGHT, et al., | ) ) ) |
| Defendants. | ) ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I. INTRODUCTION[1]

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Antonio Jones, a state inmate. In this complaint, Jones challenges the constitutionality of force used against him on August 18, 2016 by officers at Easterling Correctional Facility during a shakedown by members of the Certified Emergency Response Team (CERT), and defendants' failure to protect him from this use of force. Jones names DeJour Knight, Samuel Snelson, Walter Myers, Larry McCovery, James Griffin and Antonio McClain, correctional officials working at Easterling on the date of the incident, as defendants. Jones seeks monetary damages for the alleged violations of his constitutional rights. Doc. 1 at 4.

The defendants filed an answer, special report and supporting evidentiary materials, including affidavits, prison reports and medical records, addressing Jones' claims for relief.

---

[1]All cited documents and page numbers referenced herein are those assigned by this court in the docketing process.

In these documents, the defendants deny that they acted in violation of Jones' constitutional rights. After receipt of the defendants' special report, the court issued an order directing Jones to file a response to the reports, including affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 22 at 2. The order specifically cautioned Jones that "**unless within fifteen (15) days from the date of this order a party … presents sufficient legal cause why such action should not be undertaken** … the court may at any time [after expiration of the time for the plaintiff filing a response] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 22 at 3. Pursuant to this order, the court deems it appropriate to treat the defendants' report as a motion for summary judgment.

Upon consideration of the defendants' motion for summary judgment, the evidentiary materials filed in support thereof, the sworn complaint, and the plaintiff's affidavit in response to the special report, the court concludes that the defendants' motion for summary judgment is due to be denied as to the plaintiff's allegations of excessive force and failure to protect lodged against them in their individual capacities and granted with respect to his request for monetary damages in their official capacities.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

2

genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007); Fed. R. Civ. P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Beard v. Banks*, 548 U.S. 521, 529 (2006) (holding that court "must examine the record to see whether the [party moving for summary judgment], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated the absence of a genuine [dispute] of material fact, and his entitlement to judgment as a matter of law.") (internal citations and quotation marks omitted); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his

burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial).

At this juncture, the court "must determine whether [the plaintiff], who bears the burden of persuasion has by affidavits or as otherwise provided in Rule 56 … set forth specific facts showing that there is a genuine [dispute of material fact] for trial." *Beard*, 521 U.S. at 529 (internal citations and quotation marks omitted); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the plaintiff produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F.Supp.2d 1297, 1301 (M.D. Fla. 2011). "[T]he judge's function [at the summary judgment stage] is not

himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

However, at the summary judgment stage, the law requires that this court accept as true "statements in [the plaintiff's] verified complaint, sworn response to the officers' motion for summary judgment, and sworn affidavit attached to that response [or an affidavit filed independently of the response.]" *Sears v. Roberts*, 2019 WL 1785355, at *3 (11th Cir. April 24, 2019); *Anderson*, 477 U.S. at 255 (holding that when deciding whether to grant summary judgment a court must draw "all justifiable inferences in [the plaintiff's] favor."). "That [a plaintiff's] evidence consists mainly of his own testimony in his verified complaint, sworn response, and sworn affidavit does not preclude a finding that a genuine dispute of material fact exists. 'As a general principle, a plaintiff's testimony cannot be discounted on summary judgment unless it is blatantly contradicted by the record, blatantly inconsistent, or incredible as a matter of law, meaning it relates facts that could not have possibly been observed or events that are contrary to the laws of nature.'" *Sears*, 2019 WL 1785355 at *5 (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013). The Supreme Court has acknowledged that a direct contradiction occurs where a videotape of the incident at issue clearly contradicts the plaintiff's version of events. *See Scott v. Harris*, 550 U.S. 372, 378–79 (2007).

The court has undertaken a thorough review of all the evidence contained in the record. After this review, the court finds that Jones, through the submission of his sworn

5

complaint and affidavit in response to the defendants' special report, has demonstrated a genuine dispute of material fact in order to preclude entry of summary judgment on his excessive force and failure to protect claims presented against the defendants in their individual capacities.[2]

### III. DISCUSSION

### A. Absolute Immunity

To the extent that Jones brings claims against the defendants in their official capacities seeking monetary damages, they are entitled to absolute immunity. Official capacity lawsuits are "in all respects other than name, … treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).

> "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]." *Alabama v. Pugh*, 438 U.S. 781, 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. *Virginia Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 131 S.Ct. 1632, 1637–38, 179 L.Ed.2d 675 (2011). "A State's consent to suit must be 'unequivocally expressed' in the text of [a] relevant statute." *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1658, 179 L.Ed.2d 700 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). "Waiver may not be implied." *Id*. Likewise, "Congress' intent to abrogate the States' immunity from suit must be obvious from 'a clear legislative statement.'" *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (quoting *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 786, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991)).

---

[2]"Even if [the plaintiff's] sworn statements turn out to be exaggerations or false, they are enough to raise a genuine issue of material fact about the amount of force [the officers] used and whether [they] applied it in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Sears*, 2019 WL 1785355 at *6 (internal quotation marks omitted) (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) and *Skrtich v. Thornton,* 280 F.3d 1295, 1303 (11th Cir. 2002)).

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015). Thus, a state official may not be sued in his or her official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit. *Pugh,* 438 U.S. at 782, 98 S.Ct. 3057 (citing Ala. Const. art. I, § 14.)

*Selensky*, 619 F. App'x at 849. "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)). In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment from the request for monetary damages from them in their official capacities. *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected from suit for damages under the Eleventh Amendment); *Edwards v. Wallace Community College,* 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).

### B. Relevant Facts

On August 18, 2016, CERT officers entered dorm E1 at Easterling to conduct a search or shakedown of inmates in this dorm. Defendant Griffin ordered Jones to "pull up

his pants … [but Jones was] only in his boxers shorts[.]" Doc. 1 at 3. "At [this] time and for no reason," defendant Snelson struck Jones several times with his baton "across [the plaintiff's] arms and back," then defendant "Knight started with his assault." Doc. 1 at 3. Jones alleges that while he was handcuffed and on the floor, an officer, identified by the defendants as Michael Graves, sprayed Jones with a chemical agent, after which defendants Snelson and Knight continued their assaults on him. Doc. 1 at 3; Doc. 26 at 3. Jones contends that he suffered back, leg, arm, head and neck problems as a result of the force used against him by defendants Snelson and Knight. Doc 1 at 3; Doc. 26 at 2.

Jones challenges the constitutionality of the force used by Snelson and Knight during the shakedown. Specifically, he maintains that there was no need for the use of force because these defendants did not provide him ample time to obey orders to pull up his pants and get on the floor. Jones also argues that the amount of force used by defendants Snelson and Knight during the cell extraction was excessive, as these officers, without justification, beat him with their batons, kneed him and dragged him across the floor. Jones further alleges that defendants Griffin, McClain and McCovery observed the physical force used against him by defendants Snelson and Knight but failed to intervene. Finally, Jones alleges that defendant Myers, the warden at Easterling at the time of the incident, authorized or ordered the use of excessive force by officers during the shakedown.

### C. Excessive Force and Failure to Protect

(i) <u>Qualified Immunity</u>. As to the failure to protect and excessive force claims lodged by Jones against the defendants in their individual capacities, the defendants argue

8

they are entitled to qualified immunity.

> Under the doctrine of qualified immunity, if the defendant establishes that he was acting within the scope of his discretionary authority when the alleged excessive force occurred, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. *Skop* [*v. City of Atlanta*, 485 F.3d 1130, 1136–37 (11th Cir. 2007)]. To defeat qualified immunity, a plaintiff must show both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Fennell* [*v. Gilstrap*, 559 F.3d 1212, 1216 (11th Cir. 2009) (per curiam)]. In Eighth Amendment excessive force cases, however, "the subjective element required to establish [the constitutional violation] is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002).

*Bowden v. Stokely*, 576 F. App'x 951, 954–55 (11th Cir. 2014). "Moreover, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held personally liable for his nonfeasance." *Skrtich*, 280 F.3d at 1301. "While … there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." *Bowden*, 576 F. App'x at 956 (citing *Skrtich*, 280 F.3d at 1301). Accordingly, this court will consider whether the plaintiff's allegations that Snelson and Knight maliciously and sadistically used excessive force against him, while McClain, Griffin and McCovery witnessed the force and failed to intervene, and Myers authorized the use of excessive force—which the court must take as true for purposes of summary judgment—sets forth violations of his Eighth Amendment rights.

(ii) <u>Excessive Force and Failure to Protect</u>. Claims of excessive force by correctional officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8. The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted). With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Id*. In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force … are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. [*Hudson*, 503 U.S.] at 7, 112 S.Ct. (1992). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley [v. Albers*, 475 U.S. 312, 321 (1986))]. The extent of injury may also provide some indication of the amount of force applied.

*Wilkins*, 559 U.S. at 37. "The relatively modest nature of [an inmate's] alleged injuries will no doubt limit the damages he may recover [if ultimately successful]." *Id*. at 40.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore

10

> discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7–8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-01; *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (In determining whether officers used force maliciously and sadistically, a court must "look at the need for the application of force; the relationship between the need and the amount of force that was used; and the extent of the injury inflicted upon the prisoner[;] the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response. Not only that, but [a court] must also give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance.") (internal quotation marks and citations omitted).

> "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated … whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic

11

>or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S.Ct. at 995[.]"

*Wilkins*, 559 U.S. at 38. Thus, in an excessive force case such as the one at hand,

>the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S.Ct. 1175, 1178, 175 L.Ed.2d 995 (2010) (per curiam) (quotation marks omitted) (concluding that a gratuitous beating by prison guards, even without injuries requiring medical attention, violated a prisoner's Eighth Amendment rights)."

*Bowden*, 576 F. App'x at 953. Thus, the focus of this court in an "Eighth Amendment inquiry [as to excessive force] is on the nature of the force applied, not on the extent of the injury inflicted." *Sears*, 2019 WL 1785355, at *3.

Jones alleges that on August 18, 2016 defendants Snelson and Knight used excessive force against him. In support of this claim, Jones contends that these officers, without reason or warning, hit him with their batons, kneed him, and dragged him across the floor. In addition, Jones complains that defendants Griffin, McClain and McCovery failed to intervene on his behalf to stop the alleged acts of excessive force and that defendant Myers authorized the use of excessive force by the CERT officers.

After this incident, defendant Knight escorted Jones to the health care unit for decontamination and examination. Nurse Madalyn Thomas examined Jones and noted only an abrasion to his back, as stated on the body chart submitted by the defendants. Doc. 21-1 at 3. In his affidavit filed in response to the defendants' special report, Jones challenges the findings set forth by Nurse Thomas on this body chart as false, and maintains she actually completed a different body chart showing other injuries. Doc. 26 at 8. He also

12

asserts that the photographs submitted by the defendants, Doc. 21-1 at 6–8, are incomplete because they do not show his lower arms and legs, and a shadow is cast over some of his injured areas. Doc. 26 at 4.

The defendants deny Jones' claims regarding the use of excessive force, the alleged failure to protect him from this force, and the purported authorization of excessive force by the warden. Specifically, defendants Snelson and Knight deny using excessive force against Jones, and defendants Griffin, McClain, and McCovery maintain that they did not witness any other officer use force beyond that necessary to gain control of Jones during the shakedown. Thus, these defendants contend there was no need for their intervention to protect Jones. The defendants also maintain that the use of force was necessary because Jones failed to comply with direct orders that he pull up his pants, took issue with the officer referring to his boxer shorts as pants, refused an order to stand, and then resisted the efforts of defendant Snelson to place him in handcuffs. Doc. 21-1 at 2; Doc. 21-3 at 1. Finally, defendant Myers denies violating Jones' constitutional rights with respect to the force used against him.

Even though the defendants dispute the version of events presented by Jones, the court is required, at this stage of the proceedings, to view the facts in the light most favorable to Jones and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Service, Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Sears*, 2019 WL 1785355, at *3-4. Jones alleges that defendants Snelson and Knight took actions against him—i.e., repeatedly struck him with their batons, kneed him and dragged him across the

floor of the dorm—without provocation and while he posed no threat to them or the security of the facility. The pleadings filed by Jones also indicate that defendants McCovery, Griffin and McClain viewed the aforementioned uses of force without intervening to protect the plaintiff. Jones also maintains that defendant Myers authorized the use of excessive force during the shakedown. Jones asserts that the challenged actions caused him to suffer injuries to his back, arms, legs, head and neck. In sum, Jones contends that he was subjected to an unprovoked attack under circumstances that did not warrant the amount of force used, which violated his constitutional rights. *See, Bowden*, 576 F. App'x at 954.

As previously explained, the defendants deny Jones' allegations regarding the use of excessive force and maintain that at no time during the incident was more force used than necessary to subdue and gain control of Jones after he repeatedly refused to comply with several direct orders. The defendants also deny witnessing any use of excessive force against Jones. Nevertheless, viewing the facts in the light most favorable to Jones, the court concludes that the defendants are not entitled to qualified immunity, as the plaintiff has alleged facts sufficient to survive their motion for summary judgment regarding his excessive force and failure to protect claims lodged against them in their individual capacities. *See Skrtich*, 280 F.3d at 1301. Specifically, disputed issues of material facts exist regarding the need for the use of force, the nature of the force used, whether defendants Snelson and Knight acted "maliciously and sadistically" to cause harm, whether defendants McCovery, Griffin and McClain failed to intervene when faced with circumstances which warranted intervention, and whether defendant Myers authorized the

use of excessive force by CERT members. Consequently, the motion for summary judgment with respect to the claims of excessive force and failure to protect lodged against the defendants in their individual capacities for monetary damages is due to be denied.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment as to the plaintiff's claims seeking monetary damages from them in their official capacities be GRANTED and these claims be DISMISSED with prejudice because the defendants are entitled to absolute immunity from such damages.

2. The motion for summary judgment filed on behalf of the defendants as to the plaintiff's excessive force and failure to protect claims lodged against them in their individual capacities be DENIED.

3. This case be referred back to the undersigned for an evidentiary hearing on the plaintiff's surviving claims of excessive force and failure to protect presented against defendants Knight, Snelson, McCovery, Griffin, McClain and Myers for monetary damages in their individual capacities.

On or before July 8, 2019 the parties may file objections to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo*

determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, on this the 20th day of June, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge